107 F.3d 878
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis Deondre CALLUM, Defendant-Appellant.
 No. 96-50044.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1997.*
Decided Feb. 28, 1997.
 
 1
 Before: TROTT, D.W. NELSON, Circuit Judges, and ROBERT J. BRYAN,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Curtis Deondre Callum appeals his convictions, following a jury trial, for armed bank robbery and use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2113(a), (d) and 18 U.S.C. § 924(c), respectively. Callum contends that the district court improperly admitted testimony comparing the tank top worn by the robber, as depicted in bank surveillance photographs, to that worn by Callum when he was arrested. In addition, Callum contests the court's decision to take judicial notice of the starting times of a movie Callum said he was watching on the day the robbery occurred. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. Special Agent Vu's testimony
 
 4
 At trial, while holding up the tank top worn by Callum at the time of his arrest, Special Agent Trung Vu pointed to a bank surveillance photograph of the robber. Vu compared the logo on Callum's tank top to the writing on the tank top in the surveillance photograph. Defense counsel objected to this testimony as impermissible lay opinion, and Callum contends on appeal that the court erred in admitting Vu's testimony.
 
 
 5
 A district court's decision to admit lay opinion testimony under Federal Rule of Evidence 701[1] "must be upheld unless shown to be clearly erroneous or a clear result of an abuse of judicial discretion." United States v. Skeet, 665 F.2d 983, 985-86 (9th Cir.1982).
 
 
 6
 We conclude that the district court's decision to admit Vu's testimony was neither clearly erroneous nor an abuse of discretion. In fact, Vu's testimony did not clearly amount to lay opinion, as Vu did not draw the conclusion that the writing on the tank top matched that in the photograph. Even assuming that Vu's testimony amounted to a lay opinion, we conclude that the district court did not err in admitting it.
 
 
 7
 We routinely have held that a lay witness may identify evidence shown in videotapes or surveillance photographs when the witness is familiar with the evidence. In particular, in bank robbery cases we have allowed individuals familiar with the defendant to give their opinions as to whether bank surveillance photographs depicted the defendant, even when they did not witness the robbery. United States v. Miranda, 986 F.2d 1283, 1285 (9th Cir.), cert. denied, 508 U.S. 929 (1993); United States v. Langford, 802 F.2d 1176, 1178-79 (9th Cir.1986), cert. denied, 483 U.S. 1008 (1987). Callum's argument that Vu's testimony should be excluded because Vu did not witness the robbery is therefore without merit. Indeed, in a recent case involving testimony similar to that at issue, we determined that the district court did not abuse its discretion in allowing a police officer to identify individuals depicted in a video tape because of his familiarity with the contents of the tape, even though the officer was not present at the scene of the crime. United States v. Begay, 42 F.3d 486, 502-03 (9th Cir.1994), cert. denied, 116 S.Ct. 93 (1995).
 
 
 8
 In such cases, the key issue is whether the witness's opinions aid the jury by making identifications based on information "not immediately observable by the jury at trial." Langford, 802 F.2d at 1179; see also Begay, 42 F.3d at 503 (noting that because officer had spent more than 100 hours viewing video of demonstration by over 200 people, officer's testimony "could help the jury discern correctly and efficiently the events depicted in the videotape"). Here, the writing on the T-shirt portrayed in the photographs was not immediately apparent. Vu was familiar with the tank top worn by Callum and had carefully analyzed the surveillance photographs. Under these circumstances, we find that it was not an abuse of discretion for the district court to admit Vu's testimony.
 
 II. Judicial Notice
 
 9
 Relying on a newspaper advertisement, the district court took judicial notice of the starting times of Operation Dumbo Drop, the movie Callum claimed he was watching at the Puente Hills mall on the day of the robbery. Callum testified that he had watched two movies on that day: first, Operation Dumbo Drop, which he said began at about noon, and second, Mortal Combat. The advertisement reported that the Puente Hills mall was showing Operation Dumbo Drop at 5:15 p.m. and 10:00 p.m. on that day. The robbery took place at 3:55 p.m.
 
 
 10
 The district court's decision to take judicial notice of the starting times of the movie probably was an abuse of discretion. See United States v. Chapel, 41 F.3d 1338, 1342 (9th Cir.1994) (stating that district court's decision to take judicial notice under Fed.R.Evid. 201 is reviewed for abuse of discretion), cert. denied, 115 S.Ct. 2017 (1995). A judicially noticed fact must be one that is "not subject to reasonable dispute" either because it is "generally known within the territorial jurisdiction of the trial court" or because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.
 
 
 11
 In this case, the accuracy of the newspaper advertisement is not clearly beyond dispute. It is true that a court may take judicial notice of information in newspaper articles. Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458-59 (9th Cir.1995). Here, however, the prosecution did not introduce any evidence in addition to the advertisement corroborating the starting times of the movie. See Ritter, 58 F.3d at 459 (emphasizing that fact asserted in newspaper article was supported by plaintiff's deposition testimony). Moreover, even if the advertisement was accurate, there was no evidence that it was comprehensive, that is, that it purported to list all of the showings of the movie on that day rather than merely advertising the evening showings.
 
 
 12
 Nonetheless, even if the district court abused its discretion in taking judicial notice of the movie's starting times, the error was harmless. The prosecution introduced overwhelming evidence of Callum's guilt. Two bank employees identified Callum as the bank robber, both in a photographic line-up and again in court. Callum's car was discovered approximately 200 yards from the bank, and a witness to the robbery identified a blue and black jacket hanging out of the car as the one worn by the robber. The witness also identified sunglasses found in the car as those worn by the robber. Callum first denied, but later admitted, that the sunglasses and jacket belonged to him. In addition, the sawed-off shotgun used by the robber was found twenty feet from the car.[2] Furthermore, the arresting officer testified to numerous inconsistencies in Callum's story that he was watching movies at the time of the robbery.
 
 III. Conclusion
 
 13
 The district court did not abuse its discretion in admitting Vu's testimony comparing the writing on Callum's tank top with the writing on the tank top worn by the bank robber, as depicted in the surveillance photographs. In addition, any error made by the district court in taking judicial notice of the starting times of Operation Dumbo Drop was harmless. Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 701 limits the testimony of non-experts to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."
 
 
 [2]
 Police officers discovered that the car belonged to Callum after they found letters addressed to Callum in the car, and Callum called the police to report the car as stolen later that evening